**Linda SIKLOS, Plaintiff,**

v.

**NORTHEASTERN ANESTHESIA SERVICES, P.C. and Northeastern Anesthesia Services, P.C. Disability Income Plan, Defendants.**

**No. 04 CIV.8652 SCR.**

United States District Court, S.D. New York.

Feb. 6, 2007.

Bernard Weinreb, Esq., Suffern, NY, for Plaintiff.

Jonathan Marc Kozak, Jackson Lewis LLP, White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

Linda Siklos ("Plaintiff") brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA") against Northeastern Anesthesia Services, P.C. ("NAS") and Northeastern Anesthesia Services, P.C. Disability Income Plan ("Plan") (collectively "Defendants"). Plaintiff claims that she is entitled to recover the disability benefits she should have received but for Defendants' error. Plaintiff also asks this Court to require Defendants to provide Plan documents that she requested in March, 2004.

Defendants now move to dismiss Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. While Defendants asked this Court to dismiss all of Plaintiff's claims, Defendants only discussed Plaintiff's first claim. Accordingly, this Court will only address Defendants' motion with respect to Plaintiff's first claim. For the reasons set forth below, Defendants' motion is denied.

### I. Background

The following sets forth the facts of this case as stated in Plaintiff's complaint. On or about April 29, 2002, Plaintiff began her employment with NAS on a full-time basis. During her employment, she was automat-

ically covered under the Plan for disability benefits.

On or about April 17, 2003, Plaintiff injured her neck, arms, and shoulders while lifting a file at work. Following the accident, she returned to work on a part-time basis because she was unable to work a full-time schedule.

In or about June, 2003, Plaintiff developed Bilateral Carpal Tunnel Syndrome. As a result, she had to stop working on or about August 28, 2003.

Sometime thereafter, Plaintiff applied for disability benefits. Her application was rejected by Northwestern Mutual, the insurance company that provided the benefits under the Plan, because a disability policy had not been issued to Plaintiff. A disability policy had not been issued because Defendants had not completed the required paperwork. Had Plaintiff been covered, she would have been entitled to $398,400 in disability benefits.

On or about March 8, 2004, Plaintiff requested, in writing, that Defendants provide her with, *inter alia*, (1) each governing Plan document and amendments in effect during 2003; (2) each summary plan description for the Plan in effect during 2003; and (3) documents that pertain to Plaintiff's eligibility for disability pay benefits. On or about June 29, 2004, Defendants provided a copy of a sample disability income policy and the first two pages of a ten-page document entitled "A Northwestern Mutual Life Disability Income Presentation (Prepared for Linda A. Siklos)." Plaintiff has not received any other documents from Defendants.

## II. Standard of Review

In evaluating a motion to dismiss, a court "must view all allegations raised in the complaint in the light most favorable to the non-moving party ... and 'must accept as true all factual allegations in the complaint.'" *Newman & Schwartz v. As-*

*plundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)) (citation omitted). In doing so, a court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). A court must deny a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Because the complaint must allege facts which confer a cognizable right of action, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *York v. Ass'n of the Bar,* 286 F.3d 122, 125 (2d Cir.2002) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## III. Discussion

### A. Plaintiff's Request To Amend Her Complaint

■ In response to Defendants' motion to dismiss, Plaintiff submitted her first amended complaint. Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his or her "pleading once as a matter of course at any time before a responsive pleading is served ...." Fed.R.Civ.P. 15(a). A motion to dismiss is not a responsive pleading. *See, e.g., Barbara v. New York Stock Exch., Inc.,* 99 F.3d 49, 56 (2d Cir.1996); *Thompson v. Carter,* 284 F.3d 411, 416 at n. 2 (2d Cir.2002). Accordingly, Plaintiff may amend her complaint, and, in deciding Defendants' motion to dismiss, this Court will consider Plaintiff's amended complaint.

## B. Plaintiff's Claim Under Section 1132(a)(1)(B)

Plaintiff brought her first claim under Section 1132(a)(1)(B) of ERISA. 29 U.S.C. § 1132(a)(1)(B) (2006). Under that section, a plaintiff may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.*

A claim under Section 1132(a)(1)(B) "is the assertion of a contractual right under a benefit plan." *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir.1999). Therefore, " 'to enforce the terms of the plan under Section 1132(a)(1)(B) the participant must first qualify for the benefits provided in that plan.' " *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 583 (2d Cir.2006) (quoting *Strom*, 202 F.3d at 142); *see also Weinreb v. Hospital For Joint Diseases Orthopaedic Institute*, 404 F.3d 167, 170 (2d Cir.2005) ("A suit for benefits due under the terms of an ERISA-governed plan necessarily fails where the participant does not qualify for those benefits . . . .").

At this stage of the lawsuit, Plaintiff has sufficiently alleged that she was qualified for benefits under her Plan. In her amended complaint, Plaintiff asserts that she was automatically covered by the Plan. This is sufficient as this Court must accept Plaintiff's allegation as true and there are no plan documents that contradict her complaint or provide additional information about how an individual qualifies for benefits.

Defendants assert that the Disability Income Sample Policy "explicitly require[s] an application before insurance coverage actually begins" and "as a condition of coverage, . . . the insurer [must] accept the application . . . ." (Defs.' Reply Mem. at 5, 4.) As a result, she was not covered by the Plan, and, therefore, cannot bring a claim to recover benefits due to her "under the terms" of the Plan. Defendants assert that "Plaintiff blurs the distinction between being 'eligible' (i.e., being potentially able to receive actual coverage) and actualizing that coverage by meeting the Plan's application condition." (Defs.' Reply Mem. at 6.)

Assuming, without deciding, that a sample policy could function as a plan document and, as such, could be considered by this Court, the document is not nearly as clear as Defendants make it out to be. The applicable portion of the sample policy reads:

IMPORTANT NOTICE CONCERNING STATEMENTS IN THE APPLICATION FOR YOUR INSURANCE

Please read the copy of the application attached in this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied. Carefully check the application and write to THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, 720 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. The application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

(Kozak Aff. Ex. B at 1.) Although the above passage seems to imply that some type of application is involved with Northwestern Mutual's disability policies, it does not explicitly state that an individual Plan member must submit an application as a condition of coverage. Moreover, there was no sample application included. Finally, the sample policy also has disclaimer on the same page:

This is a representative sample of Northwestern Mutual Life's RR series Non–Cancelable and Guaranteed Renewable Disability Income Policy. Policy benefits and wording may vary according to the classification of the Insured or to comply with state regulations. Some contractual features and optional benefits may not be available in all states. The notions are to guide you through the provisions of the policy. They do not modify the policy terms.

(Kozak Aff. Ex. B at 1.) From this sample policy, this Court cannot conclude that Plaintiff was required to complete an application before she would be covered by the Plan.

Defendants also assert that Plaintiff's claim under Section 1132(a)(1)(B) must be dismissed because of the Second Circuit's decision in *Strom*. In *Strom*, the Second Circuit held that an employee's widow could not bring suit under Section 1132(a)(1)(B) because the employee was not qualified for the coverage where the employee died before the first day of the month following the carrier's approval of his application, even though the failure was the employer's fault. The employee's widow "was not permitted to recover under § 502(a)(1)(B) because she was not entitled to any benefits under the terms of the plan." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 583 (2d Cir.2006). "And any possible breach of fiduciary duty by the plan administrator did not alter that fact." *Id.* (citing *Strom*, 202 F.3d at 141). Similarly, Defendants argue, Plaintiff cannot prevail on the argument that a policy was not issued to her because NAS and/or the Plan failed to complete the necessary paperwork.

In *Strom*, however, the employee was seeking supplemental life insurance, which was conditioned on "submission of evidence of good health acceptable to the carrier." *Strom*, 202 F.3d at 140. Further, the insurance carrier, MetLife, informed the employee that his coverage would become effective September 1, 1994, the first day of the month following MetLife's approval of the request for coverage. *Id.* at 142–43. Thus, when the employee died on August 28, 1994, he did not yet qualify for benefits under his plan. In contrast, here, Plaintiff alleges that she was automatically covered by the Plan. She does not state that her benefits were conditioned on NAS or the Plan completing paperwork. As Plaintiff sufficiently alleges that she was qualified for benefits under the Plan, Defendants' motion to dismiss is denied.

### IV. Conclusion

For the reasons set forth above, Defendants' motion is denied.

*It is so ordered.*