**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

AUG 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| CHARLES E. NEALY, Jr., | No. 23-15385 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-01123-DLR-JFM |
| v. | |
| DAVID SHINN, Director, Director of the Arizona Department of Corrections; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted April 12, 2024
San Francisco, California

Before: SCHROEDER, GRABER, and SUNG, Circuit Judges.

Plaintiff Charles E. Nealy, Jr. appeals the district court's summary judgment

in favor of Defendants Milligan, Hall, and Willis on his free exercise claims

brought under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized

Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. We have jurisdiction under 28

U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**1. Mootness**

We disagree with the district court's conclusion that Nealy's claims for injunctive relief are moot. In assessing mootness, the district court erroneously considered only the likelihood "that another incident like the November 22, 2019[,] incident will occur and that Jumu'ah services will be temporarily suspended as a result." Nealy seeks injunctive relief from interference with his access to Jumu'ah services generally, so the question is whether any interference could be reasonably expected to recur, not whether interference will occur under the same circumstances.

Further, the district court erred in concluding that Nealy's injunctive relief claim was moot because Jumu'ah services had resumed. Voluntary cessation of challenged conduct "does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019) (citations and internal quotation marks omitted). Voluntary cessation moots a case only if the defendant meets the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Here, Defendants did not meet their burden in proving that interference with Nealy's religious exercise could not reasonably be

expected to recur. Officers interrupted and ended Jumu'ah prayer services. Jumu'ah services were then suspended for multiple weeks as a disciplinary sanction. Although services eventually resumed, the resumption of services was conditional and limited in other respects. Defendants failed to show that procedural safeguards would prevent interference with Nealy's religious exercise in the future. *See Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018), *aff'd*, 601 U.S. 234 (2024) (explaining that courts must consider the relevant "procedural safeguards" in assessing the voluntary cessation doctrine). To the contrary, the record shows that Defendants suspended Jumu'ah services or interfered with Nealy's participation in those services on at least two additional occasions.[1]

### 2. The November 2019 Incident[2]

---

[1] Jumu'ah services were suspended for two consecutive Fridays: March 27, 2020, and April 3, 2020. That directly contradicts the district court's assertion that "there is no evidence that services have been suspended since [the November 2019 incident]." In addition, the record supports a finding that there were additional interruptions, on at least two occasions, even after Plaintiff filed suit: in March 2021, Plaintiff's name was left off of the turnout sheet for Jumu'ah services "for some mysterious reason," and he was therefore not pulled out for the service that took place on March 5, 2021. Plaintiff was also purportedly denied access to "legally approved" prayer rugs and prayer beads during Ramadan—the holy Islamic month.

[2] Although Nealy's complaint alleges that the November 2019 incident and ensuing suspension of Jumu'ah services, together, interfered with his religious exercise in violation of the First Amendment and RLUIPA, the district court analyzed the incident and the suspension separately. Because Nealy also analyzes

**Free Exercise Claim.** The district court improperly granted summary judgment to Defendants on Nealy's First Amendment free exercise claim based on the November 2019 disruption and early termination of Jumu'ah prayer service. We assume without deciding that, to state a free exercise claim, Nealy must demonstrate a substantial burden on his exercise of religion.[3] To assess whether the interruption was a substantial burden on Nealy's religious exercise, "we must first identify the religious exercise at issue." *Jones v. Slade*, 23 F.4th 1124, 1141–1145 (9th Cir. 2022) (assessing substantial burden in context of RLUIPA and free exercise claims). Here, the religious exercise at issue is uninterrupted Jumu'ah prayer.[4] The district court erred by re-characterizing Nealy's religious exercise "at a higher level of generality" than what he claimed, *i.e.*, prayer generally, instead of uninterrupted prayer. *Id.* at 1142.

The district court cited *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998), for the proposition that "relatively short-term and sporadic interferences typically do not amount to a substantial burden." But *Canell* is inapposite because

---

them separately in this appeal, we do the same but do not address whether the district court erred by not considering the incident and suspension together.

[3] Nealy argues that plaintiffs do not need to demonstrate a substantial burden to state a free exercise claim. Because we conclude that summary judgment was improper even if a substantial burden is required, we need not resolve this issue.

[4] Defendants do not dispute the sincerity of Nealy's religious belief in uninterrupted prayer.

4

the plaintiff was interrupted from praying informally in his cell, not a prayer service, and he did not claim a religious belief in uninterrupted prayer. Additionally, *Canell* relied on the centrality test, which we have since held was abrogated by *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 886–87 (1990). *Shakur v. Schriro*, 514 F.3d 878, 884–885 (9th Cir. 2008).

Defendants concede that they interrupted Nealy's Jumu'ah prayer. Given Nealy's sincere belief in uninterrupted prayer, we determine that even a short interruption of the prayer service substantially burdened his free exercise of religion.[5]

**RLUIPA.** For those same reasons, we also reverse the district court's grant of summary judgment on Nealy's RLUIPA claim for injunctive relief.[6]

### 3. Suspension of Jumu'ah Services

**Free Exercise.** To prevail on a § 1983 claim against an individual defendant, a plaintiff must show "that the defendant personally participated in a

---

[5] Defendants' remaining arguments concern the applicability of *Turner v. Safley,* 482 U.S. 78, 89 (1987), and whether they are entitled to qualified immunity. Because the district court did not reach these issues, we do not address them.

[6] Because the district court did not reach the issue of whether the disruption and early termination of the prayer service was the least restrictive means of furthering a compelling governmental interest, we do not address it.

deprivation of the plaintiff's rights, or caused such a deprivation to occur." *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). The district court granted summary judgment on Nealy's free exercise claim regarding the suspension of Jumu'ah services because it determined that "[n]o reasonable jury could conclude that Defendants Milligan, Hall, and Willis were personally involved in the decision to suspend Jumu'ah prayer services." We reverse the district court's summary judgment in favor of Willis.[7]

Viewing the evidence in the light most favorable to Nealy, a reasonable juror could infer that Willis was involved in the decision to suspend Jumu'ah services as a disciplinary sanction against inmates for their conduct during the November 2019 incident based on: (1) Willis's involvement in the incident; (2) Willis's responsibilities as a prison chaplain; (3) Chaplain Henry's email to Willis regarding the incident; and (4) Willis's January 2020 Inmate Letter Response. Defendants offered conflicting evidence, including Henry's declaration and Willis's interrogatory response denying involvement. But this evidence was insufficient to conclusively resolve the material factual dispute of whether Willis was involved. *See Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) ("[W]here evidence is genuinely disputed on a particular issue—such as by

---

[7] We affirm the summary judgment in favor of Milligan and Hall because Nealy concedes that neither was involved in decisions regarding the suspension of Jumu'ah prayers.

conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" (citation omitted)); *SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (self-serving nature of affidavit "bears on its credibility" and weight); *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978) ("The courts have long recognized that summary judgment is singularly inappropriate where credibility is at issue.").[8]

**RLUIPA.** The district court did not address the merits of Nealy's claim that the suspension of Jumu'ah services violated RLUIPA. The district court granted summary judgment in favor of Defendants only because it concluded that his prospective injunctive relief claims were moot and money damages are not available under RLUIPA. We reverse the summary judgment on Nealy's RLUIPA injunctive relief claims because they are not moot. Because Nealy effectively concedes that money damages are not available under RLUIPA, we affirm the summary judgment on the claims for damages under RLUIPA.

**AFFIRMED in part, REVERSED in part, and REMANDED.[9]**

---

[8] Nealy argues for the first time in his Reply Brief that the district court's decision to summarily dismiss Deputy Warden Carr in a screening order should be reversed. On remand, Nealy may ask the district court to consider whether the summary dismissal of Deputy Warden Carr was error in light of the evidence that he was primarily responsible for the decision to suspend prayer.

[9] The parties shall bear their own costs on appeal.